# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

DAMIAN LANARD CLAUD,

      Petitioner,

v.                                               Civil Action No. **3:10cv90**

GENE M. JOHNSON,

      Respondent.

## MEMORANDUM OPINION

Damian Lanard Claud, a Virginia inmate represented by counsel, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Claud raises six grounds for relief:

| | |
|---|---|
| Claim 1 | Counsel rendered ineffective assistance by (a) advising Claud to try all four charges together, instead of severing the felon-in-possession charge from the other charges, (b) failing to request a cautionary instruction that evidence of a prior conviction is not evidence of guilt in the current trial, and (c) failing to object to the lack of such cautionary instruction. (§ 2254 Pet. 10.) |
| Claim 2 | Counsel rendered ineffective assistance by (a) failing to object to evidence that Claud was incarcerated pending trial, and (b) failing to request a jury instruction that prior convictions were not evidence of guilt in the current trial. (§ 2254 Pet. 15.) |
| Claim 3 | Counsel rendered ineffective assistance regarding witness Daniel Johnson by (a) failing to conduct crucial cross-examination of him, and (b) failing to obtain discovery of relevant impeachment evidence. (§ 2254 Pet. 18.) |
| Claim 4 | Counsel rendered ineffective assistance regarding witness Antonio Clark by (a) failing to adequately cross-examine him, and (b) failing to preserve for appeal the denial of counsel's attempts to reopen the presentation of evidence while the jury was deliberating. (§ 2254 Pet. 31.) |
| Claim 5 | Counsel rendered ineffective assistance by (a) failing to object to evidence showing that Petitioner had invoked his *Miranda*[1] rights, and (b) by failing to request an appropriate cautionary instruction. (§ 2254 Pet. 35.) |

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

Claim 6      To the extent they do not constitute independent constitutional violations, the cumulative effects of counsel's errors deprived Petitioner of a fair trial. (§ 2254 Pet. 40.)

Respondent has moved to dismiss on the grounds that Claims 1, 2, 3, 4, and 5 lack merit and that Claim 6 is procedurally defaulted because it could have been, but was not, fairly presented to the Supreme Court of Virginia. (Br. Supp. Mot. Dismiss 11-19.) Respondent filed a Rule 5 Answer. (Docket No. 4.) Both parties have consented to the jurisdiction of a United States Magistrate Judge. (Docket Nos. 6, 7.) The matter is ripe for disposition. For the reasons that follow, the Court will GRANT Respondent's Motion to Dismiss. (Docket No. 3.)

## I. PROCEDURAL HISTORY

Claud was charged in the Circuit Court for the City of Newport News ("Circuit Court") with murder, grand larceny, possession of a firearm by a convicted felon, and use of a firearm in furtherance of a felony. (§ 2254 Pet. 2.) A jury found Claud guilty of the charges and sentenced him to life in prison, plus twenty-eight years. (§ 2254 Pet. 2.) Claud appealed his conviction.

Claud appealed the trial judge's denial of Claud's motion to strike the evidence, challenging the sufficiency of the evidence and the credibility of the witnesses. The Court of Appeals of Virginia denied Claud's petition for appeal on September 26, 2007 because the totality of the evidence supported a finding of guilty beyond a reasonable doubt. *Claud v. Commonwealth*, No. 0365-07-1 (Va. Ct. App. Sept. 26, 2007). The Supreme Court of Virginia refused his petition for appeal on March 20, 2008. *Claud v. Commonwealth*, No. 072172 (Va. Mar. 20, 2008).

On March 23, 2009, Claud, by counsel, petitioned for a writ of habeas corpus in the Supreme Court of Virginia. *Claud v. Dir. Dep't Corr.*, No. 090568 (Va. Aug. 7, 2009). In that petition, Claud raised five grounds for relief, which are substantively identical to the first five claims in his § 2254 petition:

Ground 1    Trial counsel provided ineffective assistance by (a) advising Claud to waive his right to have charges tried separately, (b) failing to request a cautionary jury instruction that evidence of a prior conviction is not evidence of guilt in the current trial, and (c) failing to object to the lack of such cautionary instruction.

Ground 2    Trial counsel was ineffective for (a) failing to object to the Commonwealth's evidence that Claud was incarcerated pending trial, and (b) failing to request a cautionary instruction to protect Claud's rights to due process, a fair trial, and the presumption of innocence.

Ground 3    Trial counsel was ineffective for (a) failing to adequately cross-examine witness Daniel Johnson, (b) failing to demand specific exculpatory evidence regarding Johnson's previous informant services, and (c) failing to present impeachment testimony regarding Johnson's credibility and Johnson's bad reputation for truthfulness.

Ground 4    Trial counsel was ineffective for (a) failing to adequately cross-examine witness Antonio Clark, and (b) failing to properly preserve his failed efforts to reopen the presentation of evidence.

Ground 5    Trial counsel was ineffective for (a) failing to object to the Commonwealth's evidence surrounding Claud's arrest, including that Claud asserted his *Miranda* rights, (b) eliciting prejudicial evidence and failing to object to the Commonwealth eliciting prejudicial evidence during trial, and (c) failing to request a cautionary instruction to restrict the jury's consideration of prejudicial evidence.

Petition for Writ of Habeas Corpus at 4-5, *Claud*, No. 090568. The Supreme Court of Virginia denied his petition on the merits. *Claud*, No. 090568. The Supreme Court of Virginia held that all five grounds did not satisfy either of *Strickland*'s two prongs. *Id.* at 1-6. Claud filed a

3

petition for rehearing, which was denied by the Supreme Court of Virginia on November 13,
2009. *Claud v. Dir. Dep't Corr.*, No. 090568 (Va. Nov. 13, 2009).

On February 11, 2010, this Court received Claud's petition for a writ of habeas corpus.
(Docket No. 1.)

## II. ANALYSIS

### A.    Exhaustion and Procedural Default

State exhaustion "'is rooted in considerations of federal-state comity,'" and in
Congressional determination via federal habeas laws "that exhaustion of adequate state remedies
will 'best serve the policies of federalism.'" *Slavek v. Hinkle*, 359 F. Supp. 2d 473, 479 (E.D.
Va. 2005) (*quoting Preiser v. Rodriguez*, 411 U.S. 475, 491-92 & n.10 (1973)). The purpose of
the exhaustion is "to give the State an initial opportunity to pass upon and correct alleged
violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal
quotation marks omitted). Exhaustion has two aspects. First, a petitioner must utilize "all
available state remedies before he can apply for federal habeas relief." *Breard v. Pruett*, 134
F.3d 615, 619 (4th Cir. 1998) (*citing Matthews v. Evatt*, 105 F.3d 907, 910-11 (4th Cir. 1997)).
As to whether a petitioner has used all available state remedies, the statute notes that a habeas
petitioner "shall not be deemed to have exhausted the remedies available in the courts of the
State . . . if he has the right under the law of the State to raise, by any available procedure, the
question presented." 28 U.S.C. § 2254(c).

The second aspect of exhaustion requires a petitioner to have offered the state's courts an
adequate opportunity to address the constitutional claims advanced on federal habeas. "To
provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in

4

each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (*quoting Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). Fair presentation demands that "'both the operative facts and the controlling legal principles must be presented to the state court.'" *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (*quoting Matthews*, 105 F.3d at 911). Thus, "the presentation to the state court of a state law claim that is similar to a federal claim does not exhaust the federal claim." *Id.* (*citing Duncan*, 513 U.S. at 366); *see Gray v. Netherland*, 99 F.3d 158, 162-64 (4th Cir. 1996) (concluding petitioner had not fairly presented his legal argument to the state courts). "The burden of proving that a claim has been exhausted lies with the petitioner." *Matthews*, 105 F.3d at 911 (*citing Mallory v. Smith*, 27 F.3d 991, 994 (4th Cir. 1994)).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." *Breard*, 134 F.3d at 619. This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." *Id.* (*citing Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991)). A federal habeas petitioner also procedurally defaults claims when the "petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Id.* (*quoting Coleman*, 501 U.S. at 735 n.1).[2]

---

[2] Under these circumstances, even though the claim has not been fairly presented to the Supreme Court of Virginia, the exhaustion requirement is "technically met." *Matthews*, 105 F.3d at 911 (*citing Sweezy v. Garrison*, 694 F.2d 331, 331 (4th Cir. 1982)).

The burden of pleading and proving that a claim is procedurally defaulted rests with the state. *Jones v. Sussex I State Prison*, 591 F.3d 707, 716 (4th Cir. 2010) (citing cases). Absent a showing of cause and prejudice or a fundamental miscarriage of justice, this Court cannot review the merits of a defaulted claim. *See Harris v. Reed*, 489 U.S. 255, 262 (1989).

## B. Claim 6 is Procedurally Defaulted

In Claim 6, Claud argues that the cumulative effects of counsel's errors deprived Claud of a fair trial. (§ 2254 Pet. 40.) This claim was not fairly presented to the Supreme Court of Virginia.[3] If Claud attempted to do so now, he would be barred by section 8.01-654(B)(2) of the Virginia Code. That provision provides, in pertinent part, that a petition for writ of habeas corpus "shall contain all allegations the facts of which are known to petitioner at the time of filing . . . . No writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Va. Code Ann. § 8.01-654(B)(2). Thus, Claud is procedurally barred from raising Claim 6 here. *Breard*, 134 F.3d at 619 (*citing Coleman*, 501 U.S. at 735 n.1). Claud has not argued any basis for excusing his default. Accordingly, Claim 6 will be DISMISSED.

---

[3] In his state habeas petition, Claud did not raise a sixth ground for habeas relief based on the cumulative deficiencies of counsel raised in Claims One through Five. In his state habeas petition Claud did mention cumulative error. However, Claud was not referencing the cumulative effects of all five of counsel's alleged errors. Instead, Claud was referring to the three ways in which he argues his counsel rendered ineffective assistance during the examination of Daniel Johnson. Petition for Writ of Habeas Corpus, *Claud*, No. 090568, at 26 ("In *three* individually material ways . . . ."); *id.* at 33 ("Individually, and all the more cumulatively, these failures of Hudgins fell below an objective standard of reasonableness . . . .").

## C.    Ineffective Assistance of Counsel

To prove a constitutional claim for ineffective assistance of counsel, a petitioner must

demonstrate that counsel's representation was deficient and that actual prejudice stemmed from

the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Proving deficient

representation "requires showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* That is, a

petitioner must show that counsel's performance at trial "'fell below an objective standard of

reasonableness' based on the situation at the time rather than on hindsight." *Buckner v. Polk*,

453 F.3d 195, 201 (4th Cir. 2006) (*quoting Strickland*, 466 U.S. at 688). Proving prejudice

"requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial,

a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Put differently, a petitioner must

demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different." *Id.* at 694.

## D.    Claims 1, 2, 3, 4, and 5 Lack Merit

### 1.    Claim 1: Failure to Sever the Felon-in-Possession Charge

In Claim 1, Claud states that his trial counsel was ineffective for (a) advising Claud to try

all four charges together, instead of severing the felon-in-possession charge from the other

charges, (b) failing to request a cautionary instruction that evidence of a prior conviction is not

evidence of guilt in the current trial, and (c) failing to object to the lack of such cautionary

instruction. In Claud's affidavit, he swears:

> Before going into the courtroom on the morning of trial, attorney Hudgins
> talked to me about going to one trial on all four charges. He said that it would mean
> that the Commonwealth could tell the jury that I was already a convicted felon. He

7

did not suggest that we have two trials. He assured me that he was confident that we could win the case based on what he thought the evidence would be against me. He told me not to worry about the jury hearing about my prior conviction because it was "only" a "drug" conviction. Therefore, I did not really understand why I might want two separate trials. I did not understand from him (nor did I otherwise know) that the jury would be allowed to consider the fact of my prior conviction as evidence that I was guilty of all of the charges against me.

(§ 2254 Pet. Ex. 1 ("Claud Aff.") ¶ 3.) During Claud's plea colloquy, the Court discussed with Claud the ramifications of going to trial on a charge of possession of a firearm by a convicted felon:

> Q. You understand one of the elements of that charge the Commonwealth must prove is to establish that you are, in fact, a convicted felon? Did you understand what I just asked?
>
> A. Yes, sir.
>
> Q. Do you understand that part of that charge, in order to convict you, to prove that charge before the jury, the Commonwealth must prove that you are a convicted felon. Do you understand?
>
> A. Yes, sir.
>
> Q. Do you understand that in most circumstances they would not be allowed to bring that matter up in most general circumstances? Do you understand that?
>
> A. Yes, sir.
>
> Q. Do you agree to have that case tried today with the other charges?
>
> MR. HUDGINS: I was just going to say I might add, if he understands, if he asked the Court not to try them together that the Court would likely not force him to try that case.
>
> THE COURT: It would be almost a guarantee. That's the reason we are having this discussion.
>
> BY THE COURT:
>
> Q. Do you understand?

8

A.   I understand.

Q.   If you asked me to sever that charge from these other charges, it would not be tried today in front of this jury. Do you understand?

A.   Yes, sir.

Q.   You're agreeing to have that case tried today in front of the jury with the other charge?

A.   Yes, sir.

(Nov. 2, 2006 Tr. 10-11.) The Supreme Court of Virginia, in determining that this claim did not

satisfy *Strickland*, held:

> The record, including the trial transcript and the affidavit of trial counsel, demonstrates that counsel discussed with petitioner the risks associated with trying the firearm possession charge with the other charges. In addition, the trial court discussed with petitioner his agreement to have all of the charges tried together, that petitioner understood that the Commonwealth normally would not be allowed to mention his status as a convicted felon at trial, and that the court would likely grant a request that the firearm possession charge not be tried with the others. Petitioner has not asserted that his statements during his plea colloquy were untrue. Moreover, the jury was properly instructed as to the presumption of innocence and the burden of proof, and counsel made a tactical decision not to request a jury instruction regarding the prior conviction so as not to further draw the jury's attention to it.

*Claud*, No. 090568, at 2. Because the Supreme Court of Virginia adjudicated this claim on the

merits, this Court may not grant habeas relief thereon unless the Supreme Court of Virginia's

adjudication of the claim (1) "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law," or (2) "resulted in a decision that

was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding." 28 U.S.C. § 2254(d). Here, Claud fails to demonstrate the Supreme

Court of Virginia's rejection of this claim for lack of prejudice and for lack of deficient

9

performance was unreasonable. *See Martin v. Mills*, 361 F. App'x 885, 887 (9th Cir. 2010) (holding that a state court's rejection of a petitioner's "claim that his trial counsel was ineffective for failing to seek severance of [a] firearms charge[]," in light of "'overwhelming'" evidence against the petitioner, "was not an unreasonable application of *Strickland*.").

In this case, the testimony elicited at trial indicated that Claud was playing a dice game at a house party in an apartment dining room.[4] (Nov. 2, 2006 Tr. 72, 79, 94, 115.) Four people were playing the game. (Nov. 2, 2006 Tr. 94.) Julian "Jay" Nichols, the victim, was winning the game, and Claud was losing. (Nov. 2, 2006 Tr. 72, 94-95, 100.) Claud and Jay left the dining room and entered the kitchen. (Nov. 2, 2006 Tr. 72, 88.) Claud and Jay engaged in a whispered conversation while in the kitchen. (Nov. 2, 2006 Tr. 72, 88.) Claud then exited the kitchen, entered the dining room again, and picked up the money on the dining room floor which served as the pot in the dice game. (Nov. 2, 2006 Tr. 72, 89.) Jay followed Claud from the kitchen and Jay grabbed Claud from behind when Claud picked up the money. (Nov. 2, 2006 Tr. 72, 89.) Jay, talking about the money, said to Claud, "'You're not getting this,'" or "'You ain't getting this.'" (Nov. 2, 2006 Tr. 75.) The two fell over a chair. (Nov. 2, 2006 Tr. 72, 76, 89.) As soon as this occurred, gunshots started "ringing out." (Nov. 2, 2006 Tr. 72, 91.) Claud ran out the back door, and it appeared that he was holding something in his hand. (Nov. 2, 2006 Tr. 73.) Nichols had been shot five times and had suffered blunt force head injuries. (Nov. 2, 2006 Tr. 101.) One of the partygoers called the police. (Nov. 2, 2006 Tr. 73.) On the path that Claud

---

[4] During trial, the room in which the events took place is also referred to as a living room. (*See, e.g.*, Nov. 3, 2006 Tr. 255.)

10

followed as he ran from the apartment, police found money stained with blood. *Claud*, No. 0365-07-1, at 2.

Seventeen days later, police arrested Claud. (Nov. 2, 2006 Tr. 140.) Claud was incarcerated at Newport News City Jail. (Nov. 2, 2006 Tr. 113.) While incarcerated, Claud confessed to two other inmates, Daniel Johnson and Antonio Clark, his responsibility for the shooting. (Nov. 2, 2006 Tr. 114-15, 124.) Neither of these inmates were being compensated for their testimony at Claud's trial. (Nov. 2, 2006 Tr. 116, 121.) In his confession to Clark, Claud accurately described how many times Nichols had been shot and the general type of firearm Claud had employed.

In light of the evidence at trial, it is clear that Claud did not suffer prejudice when his attorney failed to move for severance, failed to request a cautionary instruction, or failed to object to the lack of a cautionary instruction. No evidence in this record suggests that the jury considered Claud's previous conviction for any purpose other than for purposes of guilt on the felon-in-possession charge. Accordingly, because Claud cannot demonstrate prejudice, Claim 1 will be DISMISSED.

### 2.  Claim 2: Failure to Object to Pretrial Incarceration Evidence

In Claim 2(a), Claud contends that trial counsel rendered ineffective assistance by (a) failing to object to evidence that Claud was incarcerated pending trial, and (b) failing to request a jury instruction that prior convictions were not evidence of guilt in the current trial. (§ 2254 Pet. 15.)

The Supreme Court of Virginia, in determining that this claim did not satisfy *Strickland*, held:

11

> The record, including the trial transcript, demonstrates that petitioner was incarcerated pending trial, and the Commonwealth's witnesses necessarily had to testify that they met petitioner and discussed the crimes with him while in jail. Counsel, therefore, was not ineffective for failing to make a futile objection to the admission of relevant evidence, or to request a cautionary instruction pertaining to relevant evidence.

*Claud*, No. 090568, at 3. Indeed, the Commonwealth put two individuals on the stand who testified to meeting Claud in jail. Claud confessed to the crimes at hand while in jail. Thus, any objection to evidence of Claud's pretrial detention would have been futile. Furthermore, the very fact that these witnesses were incarcerated provided the basis for Claud's attack on the witnesses' credibility. *See United States v. Atencio*, 435 F.3d 1222, 1237 (10th Cir. 2006) (holding that a benign explanation for introducing evidence of pretrial incarceration does not violate the presumption of innocence). The Supreme Court of Virginia's determination that Claud had not met *Strickland*'s two prongs was not unreasonable. 28 U.S.C. § 2254(d). Accordingly, Claim 2 will be DISMISSED.

### 3.    Claim 3: Failure to Elicit Impeachment Evidence

In Claim 3, Claud contends that counsel rendered ineffective assistance regarding witness Daniel Johnson by (a) failing to conduct crucial cross-examination of him; and, (b) failing to obtain discovery of relevant impeachment evidence. (§ 2254 Pet. 18.) Daniel Johnson was one of the two inmates to whom Claud confessed his crimes. Claud insists that his attorney should have cross-examined Johnson regarding the true extent to which Johnson had served as a confidential informant in previous cases. (§ 2254 Pet. 22.) Claud also contends that his attorney should have moved the trial court to compel the government to divulge the number and nature of Johnson's prior convictions. (§ 2254 Pet. 24.)

The Supreme Court of Virginia dismissed this claim, reasoning as follows:

> The record, including the trial transcript, demonstrates that counsel elicited testimony from Johnson that he had been convicted of several felonies and that he had been convicted of a crime involving stealing. Moreover, evidence of Johnson's past work as an informant was not relevant for impeachment purposes, as Johnson did not act as a paid informant in petitioner's case, and did not testify in exchange for leniency because there was no pending case against him. Moreover, petitioner proffered the name of only one officer, Sergeant Swartz, who could testify as to Johnson's reputation for untruthfulness. The affidavit of counsel demonstrates, however, that counsel spoke with Sergeant Swartz, who stated that Johnson had been untruthful on one occasion approximately ten years earlier, and that he would testify that since that time, he found Johnson to be a reliable informant and that he was confident in Johnson's veracity and credibility.

*Claud*, No. 090568, at 3-4. In Claud's present petition, Claud still maintains that his attorney should have called Sergeant Swartz as a witness. (§ 2254 Pet. 22-23.) However, prior to trial, Claud's attorney spoke with Sergeant Swartz. Motion to Dismiss Ex. 6, at 1-2, *Claud*, No. 090568 (filed Apr. 27, 2009). Swartz indicated that, if he testified, he would swear that over the past ten years, Johnson was a credible, reliable witness. *Id.* Such testimony would have been damaging to Claud's case. Thus, it was a reasonable trial tactic not to call Swartz to the stand. *Strickland*, 466 U.S. at 689.

At trial, Claud's attorney cross-examined Johnson. (Nov. 2, 2006 Tr. 117.) Johnson testified that he had served as a witness in a previous, unrelated murder trial. In that case, the defendant confessed to Johnson. (Nov. 2, 2006 Tr. 117.) Johnson testified against the defendant in that case, as well as in the present case, because he doesn't like inmates boasting about getting away with crimes. (Nov. 2, 2006 Tr. 118.) In neither case did Johnson receive favorable treatment for his testimony. (Nov. 2, 2006 Tr. 118.)

13

Claud's attorney elicited testimony that Johnson had been convicted of several felonies, including felonies which involved stealing. (Nov. 2, 2006 Tr. 118.) Johnson also testified that, in the past, he has served as a paid informant for the Newport News police. (Nov. 2, 2006 Tr. 118-19.) Johnson testified that he served as a paid informant "a couple of times." (Nov. 2, 2006 Tr. 119.) He also testified that he could not remember how many years had passed since he served as a paid informant. (Nov. 2, 2006 Tr. 120.) Claud alleges that Johnson in fact served as a paid informant "'extensively.'" (§ 2254 Pet. 25.)

The judge instructed the jury:

> You are the judges of the facts, the credibility of the witnesses and the weight of the evidence. You may consider the appearance and manner of the witnesses on the stand, their intelligence, their opportunity for knowing the truth and for having observed the things about which they testify, their interest in the outcome of the case, their bias, and if any have been shown their prior inconsistent statements, or whether they have knowingly testified untruthfully as to any material fact in the case.
> . . . .
> You may consider proof of the witness's prior conviction of a felony as affecting his credibility, but it does not render him incompetent to testify.

(Nov. 3, 2006 Tr. 242-43.) The record demonstrates that the Court instructed the jury to weigh Johnson's credibility alongside the substance of his testimony. No evidence suggests that if Claud's attorney had elicited the number of times that Johnson had served as a paid informant, the result of the proceedings would have been different. Accordingly, because Claud has not demonstrated deficiency or prejudice, Claim 3 will be DISMISSED.

### 4.    Claim 4:  Failure to Adequately Cross Examine

In Claim 4, Claud contends that counsel rendered ineffective assistance regarding witness Antonio Clark by (a) failing to adequately cross-examine him, and (b) failing to preserve for appeal the denial of counsel's attempts to reopen the presentation of evidence while the jury was

deliberating. (§ 2254 Pet. 31.) Clark was another inmate to whom Claud confessed his crimes. Clark testified that Claud "said he shot a person at a party, took money from the floor, and fled." *Claud*, No. 0365-07-1, at 2. Claud complains that at trial Clark testified differently than he did during the preliminary hearing. At the preliminary hearing, Clark testified:

> Q.     Did he tell you what he shot the dude with?
>
> A.     Like a 40-caliber or a 45.
>
> Q.     Okay. And did he tell you anything else about the firearm?
>
> A.     No.

(Oct. 24, 2005 Tr. 31.). At trial, Clark testified:

> Q.     Did he say anything else about the firearm?
>
> A.     He told me it was a .40 or a .45.
>
> Q.     What caliber?
>
> A.     I think .40 Glock or .45.

(Nov. 2, 2006 Tr. 124.) Clark calls the additional testimony that the gun was a "Glock" brand, "significant," "glaring," and "material."[5] (§ 2254 Pet. 32-34.) While the jury was deliberating, Claud discovered the difference in testimony, and alerted his attorney. (§ 2254 Pet. 32.) Claud's attorney then "approached the trial judge to reopen the presentation of evidence so as to adequately impeach Clark." (§ 2254 Pet. 33.) The Circuit Court denied the motion. (Nov. 3, 2006 Tr. 303.)

---

[5] The gun in this case was not available at trial to be admitted into evidence, but an expert indicated that the bullet cartridges had markings consistent with being fired from a Glock. (Nov. 2, 2006 Tr. 179.) The expert also testified that the bullets were .45 caliber. (Nov. 2, 2006 Tr. 179-80.)

15

In Claim 4(a), Claud insists that his attorney rendered ineffective assistance for failing to cross-examine Clark on this difference of testimony. In Claim 4(b), Claud contends that his attorney rendered ineffective assistance for failing to preserve for appeal the denial of the motion to reopen. The Supreme Court of Virginia dismissed both of these claims as follows:

> The record, including the affidavit of counsel, demonstrates that the gun's brand was not relevant to the defense theory of the case since Clark had already correctly identified the caliber of the gun used. Although counsel's request to reopen the case was denied, counsel, believing that the matter was within the sound discretion of the court and that its discretion had not been violated, as a matter of trial strategy, elected not to put the issue on the record.

*Claud*, No. 090568, at 5.[6]

Claim 4(a) satisfies neither *Strickland*'s performance prong nor prejudice prong. No evidence here suggests that (1) noticing the addition of the word "Glock" in Clark's testimony and (2) cross-examining Clark on this discrepancy would have changed the result of the proceeding. Clark did not offer inconsistent testimony, he merely added detail when prompted. Furthermore, Claud's attorney simply "did not pick up on the difference in testimony." Motion to Dismiss Ex. 6, at 2, *Claud*, No. 090568 (filed Apr. 27, 2009). The failure to pursue cross-examination on this relatively minor issue does not "warrant a conclusion that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Williams v. Kelly*, 816 F.2d 939, 950 (4th Cir. 1987) (internal quotation marks omitted) (*quoting Strickland*, 466 U.S. at 687).

---

[6] The Supreme Court of Virginia relies on an "affidavit of counsel." It appears, however, that the document the Supreme Court references is actually an unsworn, notarized letter. Motion to Dismiss Ex. 6, at 1-2, *Claud*, No. 090568 (filed Apr. 27, 2009).

Claim 4(b) also fails *Strickland* analysis. Claud provides no argument that his attorney should have better preserved the issue for appeal other than merely stating it as a ground for relief. However, it is clear that if counsel had objected to the court's ruling, it would not have changed the result of the proceeding. The reopening of evidence is "within the sound discretion of the trial court." *Lebedun v. Commonwealth*, 501 S.E.2d 427, 436 (Va. Ct. App. 1998) (*quoting Hargraves v. Commonwealth*, 248 S.E.2d 814, 817 (Va. 1978)). It is not unreasonable for counsel to believe that the Court did not violate its discretion when the Court denied the motion to reopen. Motion to Dismiss Ex. 6, at 2, *Claud*, No. 090568 (filed Apr. 27, 2009) ("Counsel believed the issue to be in the sound discretion of the Court and did not believe this was a violation of that discretion."). Claud's attorney did not pursue what, ultimately, could have been testimony that merely highlighted a damaging detail to his client's case. Accordingly, because Claud cannot show either deficiency or prejudice, Claim 4 will be DISMISSED.

### 5.   Claim 5:  Failure to Object to Evidence

In Claim 5, Claud contends counsel rendered ineffective assistance by (a) failing to object to various evidence, including evidence showing that Petitioner had invoked his *Miranda* rights, and (b) by failing to request an appropriate cautionary instruction. (§ 2254 Pet. 35.) Claud specifically complains that his attorney did not object to testimony of the arresting police officer. (§ 2254 Pet. 36.) The challenged testimony reads as follows:

DIRECT EXAMINATION
BY MS. SORRELL:

Q.     You're Detective Flythe of the Newport News Police Department?

A.     Yes, I am.

17

Q.   Sir, you investigated this - - what we're here for today; correct?

A.   Yes.

Q.   And you had contact with Damian Claud; is that correct?

A.   Yes, I did.

Q.   Sir, how many days was it after the crime was committed before Damian Claud was arrested?

A.   Seventeen.

MS. SORRELL:   I have no further questions.  Please answer any questions defense counsel may have.

CROSS-EXAMINATION
BY MR. HUDGINS:

Q.   Where did you arrest him?

A.   I drove down the street looking for him that day.  His mother flagged me down, and he came out of the house.

Q.   So, his mother let you know to stop there, and he came out.  So, it appeared that he was willingly turning himself over to you?

A.   Yes.

Q.   Did he give any kind of oral statement to you?

A.   The only statement that was given to me, it was actually a spontaneous statement that was at the jail, the gentleman asked a question, and he said - - the question was, he used a derogative word, "Flythe get you on bullshit?" Mr. Claud raised his hand and - -

Q.   He didn't say anything.  He just did like that?

A.   Shook his head in a negative manner, "No."

Q.   He didn't give you any oral statement.  Did you Mirandize him?

A.    I gave him his Miranda warning and took him back to the main police station, brought him a soda, before I put him in interrogation room or interview room, gave him his Miranda Warning at which time he said he wished to speak to his lawyer.

MR. HUDGINS:    Thank you.

MS. SORRELL:    I have a follow-up.

REDIRECT EXAMINATION
BY MS. SORRELL:

Q.    Just to clarify something now. You've been in contact with Damian Claud's family?

A.    I've been in contact from the first day we obtained warrants. I went over there looking for him. I talked to his stepfather and his mother. I used to work narcotics a long time ago. My face is known.

Q.    My question to you is you let his family know you've been looking for him?

A.    Several times.

Q.    Seventeen days later you finally get him?

A.    Yes.

MS. SORRELL:    No further questions.

(Nov. 2, 2006 Tr. 139-42.)

Claud complains that his attorney elicited the fact that Claud invoked his right to remain silent and did not request a cautionary instruction. (§ 2254 Pet. 36.) Claud also complains that his attorney did not object to testimony that his arrest occurred seventeen days after the crime. (§ 2254 Pet. 36.) Claud contends that his attorney should have requested jury instructions to the effect that (1) the length of time between crime and apprehension cannot be considered as evidence of guilt, and (2) requesting to speak to his lawyer is not evidence of guilt.

The record shows that the Circuit Court did issue a jury instruction regarding flight. The

Circuit Court instructed the jury:

> If a person leaves the place where a crime was committed, flees to avoid prosecution,
> flees to avoid detection, apprehension or arrest, this creates no presumption that the
> person is guilty of having committed the crime. However, it is a circumstance which
> you may consider along with other evidence.

(Nov. 3, 2006 Tr. 243.) The Supreme Court of Virginia determined that Claud's attorney's

performance was neither deficient nor prejudicial. In so holding, the Supreme Court of Virginia

stated:

> The record, including the affidavit of counsel, demonstrates that counsel was aware
> that some of the evidence could be prejudicial, but he chose, for tactical reasons, not
> to draw attention by objecting to it. Counsel remarked that petitioner invoked his
> *Miranda* rights in order to call into question why he would have made incriminating
> statements to Clark and Johnson after earlier asserting his right to remain silent.

*Claud*, No. 090568, at 5-6. The Supreme Court of Virginia's rejection of this claim on the merits

was not an unreasonable application of *Strickland*. During closing arguments, Claud's attorney

used the fact that Claud invoked *Miranda* to challenge, albeit unsuccessfully, the government's

assertion that he confessed to two jailhouse snitches:

> So, now, isn't it unusual, or isn't it interesting I guess would be a better way
> to put it, he's now coming in saying the same thing. Mr. Claud just came to him and
> was just talking to him and told him all about this event that he's supposed to have
> done.

> What would be Mr. Claud's motivation for doing that? You heard Detective
> Flythe when he testified that Mr. Claud was read his Miranda Warnings telling him
> that anything you say can and will be used against you. You don't have to make a
> statement if you don't want to and that kind of thing.

> Well, he didn't talk to Detective Flythe. Why now is he going to make a
> statement to somebody in jail, and as Mr. Johnson said, this is after the time that he

had testified in that other case? You don't think that kind of information gets around the jail? Doesn't make sense that Mr[]. Claud would be talking to anybody about it.

(Nov. 3, 2006 Tr. 285-86.)

Claud also complains of Flythe's testimony about the communication that occurred at the jail. There, an unnamed fellow inmate asked Claud, "Flythe get you on bullshit?" (Nov. 2, 2006 Tr. 141.) Flythe indicated that Claud's nonverbal response was "No." (Nov. 2, 2006 Tr. 141.) Claud suggests that this means that the fellow inmate had been wrongly accused by Flythe, "but [Claud] wouldn't even deny that Flythe got [Claud] for crimes he actually committed." (§ 2254 Pet. 38.) Even assuming that this is true, no evidence here suggests that the result of the proceedings would have been different if the objections had been made or the instructions given. Accordingly, because Claud cannot demonstrate prejudice, Claim 5 will be DISMISSED.

### III. CONCLUSION

For the reasons stated above, Respondent's Motion to Dismiss (Docket No. 3) will be GRANTED. Claud's claims will be DISMISSED. The petition for writ of habeas corpus will be DENIED. This action will be DISMISSED.

An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

No law or evidence suggests that Claud is entitled to further consideration in this matter. A certificate of appealability will therefore be DENIED.

An appropriate Final Order will accompany this Memorandum Opinion.

/s/

M. Hannah Lauck
United States Magistrate Judge

Date: 2-17-11
Richmond, Virginia